# 18-1468-cr (L)
# 18-1916-cr (con)
# 18-2795-cr (con)

————————————————————————

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————————————————

UNITED STATES OF AMERICA,

Appellee,

-v-

Tammy M. Martin,

Defendant,

————————————————————————

CLIF J. SEAWAY, TAMMY LAMERE,

Defendants-Appellants.

————————————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

————————————————————————

### BRIEF ON APPEAL FOR
### DEFENDANT-APPELLANT CLIF J. SEAWAY

————————————————————————

LISA A. PEEBLES                          Office of the Federal Public Defender
Federal Public Defender                  4 Clinton Square, 3rd Floor
MELISSA A. TUOHEY, *on brief*            Syracuse, New York 13202
Assistant Federal Public Defender        315.701.0080

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iii

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF THE ISSUE PRESENTED .......................................... 2

STATEMENT OF THE CASE ................................................................. 3

SUMMARY OF THE ARGUMENT ........................................................ 15

ARGUMENT ........................................................................................ 16

    THE DISTRICT COURT ERRED IN FAILING TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A WARRANT LACKING PROBABLE CAUSE WHERE IT WAS BASED ON THE UNCORROBORATED ALLEGATIONS OF AN INFORMANT WHO WAS NOT CREDIBLE OR RELIABLE.

    A.    Standard of review ................................................. 16

    B.    Discussion ............................................................. 16

    1.    Raymond's tip did not bear sufficient "indicia of reliability" to establish probable cause to search Seaway's residence and electronic devices. ................................................. 20

    2.    Raymond's tip was not sufficiently corroborated through an independent police investigation. ........................................ 28

3.   The good faith exception should not apply because the issuing judge was knowingly misled about Raymond's criminal history and the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." ...................................................................... 32

CONCLUSION ........................................................................... 35

CERTIFICATE OF COMPLIANCE………………………………………36

CERTIFICATE OF SERVICE................................................................. 37

ii

# TABLE OF AUTHORITIES

CASES

*Illinois v. Gates,* 462 U.S. 213 (1983) .................................................... 16

*Mapp v. Ohio,* 367 U.S. 643 (1961) ...................................................... 18

*Nardone v. United States,* 308 U.S. 338 (1939) ............................. 34

*United States v. Canfield,* 212 F.3d 713 (2d Cir. 2000) ...................... 29

*United States v. Clark,* 638 F.3d 89 (2d Cir. 2011) ............................. 30

*United States v. Falso,* 544 F.3d 110 (2d Cir. 2008) ........................... 20

*United States v. Gagnon,* 373 F.3d 230 (2d Cir. 2004) ............... 17, 23

*United States v. Leon,* 468 U.S. 897 (1984) ......................... 18, 32, 33

*United States v. Worjloh,* 546 F.3d 104 (2d Cir. 2008) ........................ 16

*Weeks v. United States,* 232 U.S. 383 (1914) .......................... 17, 34

*Wong Sun v. United States,* 371 U.S. 471 (1963) ..................... 18, 34

STATUTES

18 U.S.C. § 2(a) .................................................................................. 3

18 U.S.C. § 2251(a) ..................................................................... 1, 3, 4

18 U.S.C. § 2251(e) ..................................................................... 1, 3, 4

18 U.S.C. § 3231 ............................................................................... 1

18 U.S.C. § 3742 ............................................................................... 1

28 U.S.C. § 1291 ............................................................................... 1

iii

# JURISDICTIONAL STATEMENT

This appeal is taken from a judgment of conviction, pertaining to two indictments (16-cr-339, 16-cr-340), imposed against the Defendant-Appellant, Clif J. Seaway, in the United States District Court for the Northern District of New York by the Honorable Norman A. Mordue, Senior United States District Court Judge, entered on May 8, 2018.  A. 128.[1]  The district court had subject matter jurisdiction, pursuant to 18 U.S.C. § 3231, because this was a criminal case alleging violations of 18 U.S.C. §§ 2251(a) & (e).  A. 37, 41.  Jurisdiction in this appeal is invoked in this Court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.  A timely Notice of Appeal was filed under indictment 16-cr-339 on May 10, 2018.  A. 137.  An untimely Notice of Appeal was filed under indictment 16-cr-340 on September 14, 2018.[2]  A. 138.

---

[1] Citations to the Appendix (A) are to the page numbers inserted therein.

[2] The two matters were consolidated for trial on September 20, 2017, and indictment 16-cr-339 was made the lead case with direction from the district court that: "All future filings as to Defendant Seaway including all pretrial documents must be filed only in the lead case, 5:16-cr-339.  No further filings shall be docketed in the member case as to Defendant Seaway only, 5:16-cr-340."  A. 118, 121.  One judgment was issued for both matters referencing both indictments.  A. 128, 130.  As a result, a Notice of Appeal was inadvertently not filed under indictment 16-cr-340.  In order to preserve jurisdiction with this Court, a Notice of Appeal was filed on September 14, 2018, when defense counsel first noticed the error.  A. 138.

## STATEMENT OF THE ISSUE PRESENTED

WHETHER THE DISTRICT COURT ERRED IN FAILING TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A WARRANT LACKING PROBABLE CAUSE WHERE IT WAS BASED ON THE UNCORROBORATED ALLEGATIONS OF AN UNTESTED INFORMANT WHO WAS NOT CREDIBLE OR RELIABLE.

## STATEMENT OF THE CASE

Clif J. Seaway was charged by two indictments with multiple counts of sexual exploitation of five minors, in violation of 18 U.S.C. §§ 2251 (a) & (e). A. 37, 41. Indictment 16-cr-339 charged Seaway and Tammy M. Martin with one count of conspiracy to sexually exploit three minors (V-1, V-2, V-3) between 2001 and 2008, in violation of 18 U.S.C. § 2251(a) & (e). A. 37. The indictment also charged Seaway and Martin with three counts of sexually exploiting the same victims during the same time period under an aiding and abetting theory, in violation of 18 U.S.C. §§ 2251(a) and 2(a). A. 38. Seaway was separately charged with two counts of sexually exploiting V-1, and one count of sexually exploiting V-3, in violation of 18 U.S.C. § 2251(a). A. 38.

Indictment 16-cr-340 charged Seaway and Tammy J. Lamere with one count of conspiracy to sexually exploit V-3 between 2010 and 2013, in violation of 18 U.S.C. §§ 2251 (a) & (e). A. 41. Seaway and Lamere were also charged with one count of sexually exploiting V-3 during the same time period under an aiding and abetting theory, in violation of 18 U.S.C. §§ 2251(a) and 2(a). A. 41-42. Lastly, Seaway was separately

3

charged with one count of sexually exploiting V-3, one count of sexually exploiting V-4, and one count of sexually exploiting V-5, in violation of 18 U.S.C. § 2251 (a).  A. 42.

After pleading not guilty to both indictments, Seaway moved to suppress all evidence seized pursuant to a search warrant on the ground that it was not supported by probable cause.  A. 45, 69.  Seaway also moved to suppress the statement he made to law enforcement on February 24, 2016, on the ground that it was involuntary and the fruit of the tainted search.  A. 45, 48, 50, 69, 72, 74.  On June 22, 2017, the district court issued a Memorandum-Decision and Order denying both motions.  A. 109.

By Order dated September 20, 2017, the two indictments were consolidated for trial and the charges against Seaway, under indictment 16-cr-340, were severed from the charges against Lamere.[3]  A. 118. Following a four-day jury trial, Seaway was found guilty of all counts alleged in both indictments. A. 122-125.  On May 3, 2018, Seaway was

---

[3] On August 21, 2017, Tammy M. Martin pled guilty to counts 2, 3, and 4 of indictment 16-cr-339.  A. 11.  On December 18, 2017, Tammy Lamere pled guilty to counts 1 and 2 of indictment 16-cr-340.  A. 33.

sentenced to a combined term of 4,320 months' (or 360 years') imprisonment, life supervised release, and a $1,200 special assessment. A. 128-136. Seaway filed a timely notice of appeal under indictment 16-cr-339 on May 10, 2018 and an untimely notice of appeal under indictment 16-cr-340 on September 14, 2018.[4] A. 137, 138.

This appeal centers exclusively on a warrant issued to state and federal authorities to search Seaway's residence, vehicles, computers, and electronic media. A. 56-67.

## A. The Search Warrant

On January 14, 2016, William Raymond, III, while incarcerated at the Onondaga County Justice Center in Syracuse, New York, for the crimes of second-degree rape, second-degree criminal sex act, and endangering the welfare of a child, provided a statement to an investigator with the New York State Police Department accusing Seaway of possessing images and videos of minors on his computer that were sexual in nature. A. 53, 66-67. Raymond informed that Seaway was

---

[4] *See* footnote 2.

his uncle whom he lived with from August of 2015 through September 20, 2015.  A. 66.

In his statement, Raymond, who was 35 years old, stated he had a 13-year-old girlfriend while he was living with Seaway.  A. 66.  It was this relationship that formed the basis of his state charges.[5]  A. 53. Raymond alleged that he worked on computers with Seaway during the time he lived with him and shared pictures of his "old girlfriends" with Seaway.  A. 66.  Raymond showed these images to Seaway after he saved the files to Seaway's computer in a folder labeled "Billy's phone."  A. 66- 67.  According to Raymond, Seaway then showed him pictures of "naked female kids that were under 10 years old."  A. 66.  He described two images he had observed on Seaway's computer.  The first image was of a girl "about 6 years old sitting in a spread eagle position" and the other was an image of "an underage girl on her hands and knees in a doggy style pose" that showed her vagina.  A. 66.  Raymond said he knew the

---

[5] Raymond was ultimately convicted of Rape, 2nd Degree, Criminal Sexual Act, 2nd Degree, Class D Felonies, in violation of NY Penal Law §§ 130.30, 130.45, respectively, and sentenced to five years' imprisonment.  *See* http://nysdoccslookup.docs.ny.gov.

females were underage because he was the father to "7 kids between the ages of 5 and 16." A. 66.

Raymond also claimed Seaway had a hard drive that had a bronze or gold outer cover that he would plug into his main computer. A. 66. This hard drive contained a folder with videos "of young girls less than 10." A. 66. He described two videos. One was of a naked girl, maybe 11 or 12, dancing and possibly masturbating. A. 66. The second was of a naked girl, possibly 5 or 6 years old, lying on a bed as an adult female rubbed her chest and vagina. A. 66. Raymond believed an adult male was filming because the legs were visible in the video. A. 66.

Raymond told the investigator that he had witnessed Seaway playing a virtual reality game, "Second Life," while posing as a 5-year-old girl. A. 67. Seaway would attach "images of naked kids to his room within this game" and allow people to view them. A. 67.

Finally, Raymond claimed Seaway had told him he had a DVD that contained pictures and a video taken by Seaway five or six years ago of a female that was a friend to his daughter, who was 7 or 8 years old at the time. A. 66. Raymond stated that Seaway told him "he was playing with

7

her, but he was not specific about it." A. 66. Raymond did not ask any questions and indicated the DVD was lost. A. 66. Raymond admitted to using Seaway's computer and saving files to the computer while he lived there. A. 66-67. Raymond's statement includes Seaway's computer password. A. 67.

Five days following Raymond's statement, New York State Police Investigator Michael R. Eckler ran a criminal history check for Seaway and learned Seaway had been arrested by the Watertown Police Department in 2009 and charged with the misdemeanor offense of endangering the welfare of a child. A. 63. The Watertown Police Department had no information in their system about the 2009 arrest but indicated Seaway had been a suspect in a 2005 incident where it was alleged Seaway had touched an 8 year old female in her "pee-pee" area and had the victim touch his penis. A. 63. The investigation was closed because attempts to make contact with the victim and her mother were unsuccessful. A. 63.

On February 17, 2016, Investigator Eckler verified the address Raymond attributed to Seaway's residence. A. 63.

8

On the basis of this information, Investigator Eckler applied for a search warrant for Seaway's residence to seize, search, and examine:

1.  Any and all computers, computer program, computer data and/or computer network information as those terms are defined in Penal Law 156.00.

2.  Any computers, central processing units, external and internal drives, storage units or media, terminals and video display units, together with peripheral equipment such as keyboards, printers, modems, scanners, or digital cameras and their internal and external storage media.

3.  Any and all computing or data processing software, or data including, but not limited to hard disks, floppy disks, magnetic tapes, and integral RAM or ROM units which may reveal evidence which substantiates violations of the aforementioned NY State Penal Statutes.

4.  The following records and documents, whether contained or stored on the computer, cell phone, magnetic tape, cassette, CD disk, diskette, photo-optical device, Cloud Storage, or any other storage medium, in the form of internet history, SMS, MMS, IM:

    a.  Any access numbers, passcodes, swipe code patterns, passwords, personal identification numbers (PINS), logs, notes, memoranda and correspondence relating to computer, electronic and voice mail systems, Internet addresses and/or related contacts.

    b.  Any computing or data processing literature, including, but not limited to printed copy, instruction books, notes, papers, or listed computer programs, in whole or in part.

c. Any audio or video cassette tape recordings, books, magazines, periodicals, or other recorded or printed material, the possession of which constitutes or supports evidence of a violation of Articles 130, 260, and or 263 of the Penal Law of the State of New York.

d. Any and all photographs depicting sexual conduct by a child and/or minors engaged in sexually explicit conduct.

e. Any records or correspondence relating to the possession, transmission, collection, trading, or production of the aforementioned photographs and/or videos.

5. Any Internet capable device, such as cell phone, tablet, smartphone, gaming system that allows access to the internet and allows for the transmission of data in violation of or supporting a violation of Articles 130, 260, and 263 of the New York State Penal Law.

A. 58-59.

Investigator Eckler's overview of the investigation stated:

On January 15, 2016, William B. Raymond provided a supporting deposition indicating evidence of the aforementioned crimes may be located at …in the Town of Granby. William Raymond observed images and videos of child pornography while residing at this residence during August through September of 2015. An account of these events is included in the attached supporting deposition. It is alleged by William B. Raymond that his uncle Clif had sexually abused a child and that Clif Seaway possessed photographs he had taken of a young girl who had stayed

10

overnight at this residence several years ago.  The deposition
is attached for further details.

A. 63.

Based on Raymond's statement, Investigator Eckler had "cause to believe
that a computer or computers located" at Seaway's residence "may
contain images of child pornography" and that these images were made
"available for distribution via the Internet, in violation of Article 130,
260, and 263 of the Penal Law."  A. 63.

Upon being presented with this application, Oswego County Court
Judge Donald E. Todd issued a warrant on February 18, 2016 to search
Seaway's residence for the property described above. A. 56-57.

The warrant was executed on February 23, 2016. A. 56.   Numerous
items of electronic media and devices[6] were seized from Seaway's
residence.   A. 95.  Forensic examination of this material uncovered the
evidence used to return the two indictments against Seaway, Martin, and
Lamere.   A. 95.

---

[6] The term "electronic devices" is used in this brief to refer to computers and related
equipment, cameras and related equipment, and other devices capable of storing
digital and analog information.

11

**B.    The district court's decision denying Seaway's suppression motion**

On February 28, 2017, Seaway moved to suppress evidence obtained and derived from the search warrant.[7]  A. 45.  In support, Seaway argued that the warrant was not supported by probable cause because the warrant application was based on an unreliable informant, Raymond, who provided the information to law enforcement while incarcerated for committing sex offenses against a 13-year-old minor.  A. 48-50, 72-74.  Secondly, law enforcement made no efforts to corroborate the information provided by Raymond, other than verifying Seaway's address.  A. 49-50, 73-74.  Seaway also requested that the district court hold a hearing.  A. 47, 50, 52, 71, 74, 76.

The government filed a response in opposition to Seaway's motion to suppress on March 24, 2017.[8] A. 93.  The government argued that Raymond was a reliable informant because he was interviewed in person, signed a written affidavit under penalty of perjury, and was Seaway's nephew.  A. 100-102.  The government pointed to the detail in Raymond's

---

[7] The February 28, 2017 motion pertained to indictment 16-cr-339.  The identical motion was filed under indictment 16-cr-340 on March 3, 2017.  A. 69.

[8] Since Seaway's motions under indictments 16-cr-339 and 16-cr-340 were identical, the government filed one response to the motions.  A. 93.

statement as evidence of reliability. A. 100-101. The government contended that law enforcement sufficiently corroborated Raymond's information when they verified Seaway's address. A. 99-100. Finally, the government argued the good faith exception precluded suppression of the evidence. A. 102-103.

On June 22, 2017, the district court denied Seaway's motion without a hearing.[9] A. 109. The court's reasons were as follows:

> The fact that Raymond was in jail for a serious crime undermines his veracity to some degree. In addition, it appears that, except for confirming Seaway's address, police did not attempt to corroborate Raymond's information. Nevertheless, interpreting Raymond's declaration in a commonsense manner, the Court finds that under the totality of the circumstances, County Court Judge Todd had a substantial basis for concluding that probable cause existed. *See Gates,* 464 U.S. at 236. In his face-to-face interview with Investigator Miller, Raymond explained that he was Seaway's nephew. He gave the police Defendant's address, which the police confirmed. He explained why he was at Seaway's home at the time of the incident and gave Investigator Miller a first-hand, detailed description of the conversation that led Seaway to show Raymond the photographs and videos. Raymond gave explicit details about the photographs and videos and explained that he knew the children were under 10 years old because he had children himself. Raymond's first-hand observation of the photographs and videos and his detailed

---

[9] The district court's order erroneously stated Seaway did not request a hearing on the search warrant issue (A. 112, fn. 1), but Seaway's moving papers did request an evidentiary hearing (A. 47, 50, 52, 71, 74, 76).

descriptions of them, as well as his detailed and plausible description of the surrounding circumstances, establish the basis of his knowledge and are strong indicia of the reliability of his statement. In addition, Raymond's description of the manner in which Seaway stored the files is consistent with the affidavit of Investigator Eckler and provides additional indicia of reliability. The search warrant was supported by probable cause, and the evidence seized is admissible.

A. 113.

## C.  Seaway's trial and sentence

On September 20, 2017, the two indictments were consolidated for trial, which commenced on December 11, 2017 and concluded on December 14, 2017, with a jury verdict of guilty on all counts charged in the two indictments.  A. 16, 118, 120, 121, 122-125.  On May 3, 2018, the district court sentenced Seaway to a 360-year term of imprisonment, consisting of 360 months' on each count of conviction, imposed to run consecutively with each other; life supervised release; and a $1,200 special assessment.  A. 128, 131, 132, 135.  Judgment was entered on May 8, 2018.  A. 128.  This appeal ensued to challenge the district court's denial of Seaway's motion to suppress physical and verbal evidence derived from a search warrant lacking probable cause.

14

## SUMMARY OF THE ARGUMENT

This appeal concerns the district court's erroneous denial of Seaway's motion to suppress physical and verbal evidence that was obtained through a search warrant lacking probable cause. The district court's totality of the circumstances analysis cannot survive scrutiny because the search warrant's lack of probable cause stemmed from the uncorroborated allegations of an untested informant. The informant's statement, attached to the search warrant application, did not provide the issuing judge with any indication that the informant was truthful, credible, or reliable and law enforcement failed to corroborate the informant's allegations. The good faith exception to the exclusionary rule should not apply to the facts of this case because the search warrant application was deficient on its face, and the issuing judge was misled by the omission of the informant's criminal history from the search warrant application. Therefore, this Court should find that the district court erred in failing to suppress evidence directly seized and derived from the unconstitutional search warrant.

ARGUMENT

**THE DISTRICT COURT ERRED IN FAILING TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A WARRANT LACKING PROBABLE CAUSE WHERE IT WAS BASED ON THE UNCORROBORATED ALLEGATIONS OF AN INFORMANT WHO WAS NOT CREDIBLE OR RELIABLE.**

## A.    Standard of review

When reviewing the denial of a motion to suppress, this Court analyzes a district court's factual findings under a clearly erroneous standard and its legal conclusions *de novo. See United States v. Worjloh*, 546 F.3d 104, 108 (2d Cir. 2008).

## B.    Discussion

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause is a fluid concept— turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232 (1983). Because of this,

16

probable cause determinations are reviewed under the totality of the circumstances. *Id.,* at 238.

When a warrant is based on an affidavit, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* Probable cause may be based upon information from an informant so long as the tip bears sufficient "indicia of reliability." *Id.,* at 233. Review of an informant's tip under the totality of the circumstances assesses "an informant's veracity, reliability and basis of knowledge, and the extent to which an informant's statements—even statements about a suspect's innocent activities—are independently corroborated." *United States v. Gagnon,* 373 F.3d 230, 236 (2d Cir. 2004).

To provide a deterrent safeguard, the Supreme Court has held that, absent some exception, evidence seized in violation of the Fourth Amendment must be suppressed. *Weeks v. United States,* 232 U.S. 383

17

(1914); *Mapp v. Ohio,* 367 U.S. 643 (1961). The exclusionary rule also extends to ill-gotten evidentiary fruit of the poisonous tree, including statements obtained as a result of an arrest executed pursuant to an illegal warrant. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 485 (1963) ("Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion."). However, in *United States v. Leon,* 468 U.S. 897 (1984), the Supreme Court recognized an exception to the exclusionary rule when officers acting in good faith reasonably rely on a warrant later found to be invalid. The good-faith exception will not save a warrant that is "so facially deficient-*i.e.,* in failing to particularize the place to be searched or the things to be seized-that the executing officer cannot reasonably presume it to be valid," or a warrant "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.,* at 923.

Here, Seaway challenged the search warrant on the ground that it lacked probable cause because the search warrant application was based

on accusations from an untested informant, who gave no indication of being credible or reliable, and his information had not been corroborated through an independent police investigation. The district court rejected Seaway's challenge, holding:

> The fact that Raymond was in jail for a serious crime undermines his veracity to some degree. In addition, it appears that, except for confirming Seaway's address, police did not attempt to corroborate Raymond's information. Nevertheless, interpreting Raymond's declaration in a commonsense manner, the Court finds that under the totality of the circumstances, County Court Judge Todd had a substantial basis for concluding that probable cause existed. *See Gates,* 464 U.S. at 236. In his face-to-face interview with Investigator Miller, Raymond explained that he was Seaway's nephew. He gave the police Defendant's address, which the police confirmed. He explained why he was at Seaway's home at the time of the incident and gave Investigator Miller a first-hand, detailed description of the conversation that led Seaway to show Raymond the photographs and videos. Raymond gave explicit details about the photographs and videos and explained that he knew the children were under 10 years old because he had children himself. Raymond's first-hand observation of the photographs and videos and his detailed descriptions of them, as well as his detailed and plausible description of the surrounding circumstances, establish the basis of his knowledge and are strong indicia of the reliability of his statement. In addition, Raymond's description of the manner in which Seaway stored the files is consistent with the affidavit of Investigator Eckler and provides additional indicia of reliability. The search warrant was supported by probable cause, and the evidence seized is admissible.

A. 113.

The district court's probable cause determination should not be afforded "great deference" because the court's probable cause determination "reflected an improper analysis of the totality of the circumstances." *See United States v. Falso,* 544 F.3d 110, 117 (2d Cir. 2008) (citations omitted).

### 1. Raymond's tip did not bear sufficient "indicia of reliability" to establish probable cause to search Seaway's residence and electronic devices.

The affidavit of New York State Police Investigator Michael Eckler, submitted in support of the search warrant, rested entirely upon the uncorroborated hearsay allegations of William Raymond, III, who provided the information while incarcerated for sexually abusing a 13-year-old girl. A. 53, 58-67. If Raymond's statements about Seaway's criminal activity were believable, then the warrant would likely be supported by probable cause. However, nothing contained within Investigator Eckler's affidavit, or Raymond's statement, gave reason for the issuing judge to believe that Raymond was a truthful and reliable informant.

Raymond told a police investigator, during a "face-to-face interview," that Seaway, who was his uncle, had "at least 100 images and videos" of child pornography on a computer located at his residence in the Town of Granby, New York, which he personally observed while living with Seaway "from August of 2015 through September 20, 2015." A. 66. These are the primary facts the district court relied upon when it determined the issuing judge had "a substantial basis for concluding that probable cause existed." A. 113 (citing *Gates,* 462 U.S. at 236).

However, missing from Raymond's statement, and Investigator Eckler's affidavit, is the reason behind Raymond's departure from Seaway's residence. Raymond's exit was brought about by his September 24, 2015 arrest for committing the crimes of second degree rape, second degree criminal sex act, and endangering the welfare of a child, against a 13-year-old girl. A. 53. Raymond was held without bail on the charges because he had two or more felony convictions, including felony grand larceny and failure to pay restitution.[10] A. 53-54. Raymond was 35 years

---

[10] A search of New York State Department of corrections inmate locator shows Raymond was convicted in Onondaga County on March 14, 2016 of Rape, 2nd Degree, Criminal Sexual Act, 2nd Degree, Class D Felonies, and sentenced to five years' imprisonment. In 2007, Raymond was convicted in Oswego County of Attempted Burglary, a Class E Felony, and sentenced to 1 ½ to 3 years imprisonment. In 2000,

old at the time of his arrest. A. 53. None of this detail is included in the search warrant application.

The only information provided to the issuing judge about Raymond's criminal history was Raymond's admission in his statement that he was "locked up" for having a 13-year-old "girlfriend." A. 66. Although the judge issuing the warrant was kept in the dark about Raymond's current and past criminal history, the district court was not. A. 53.[11] Even so, the district court gave it little attention when considering the totality of the circumstances, indicating that Raymond's incarceration for a "serious crime" undermined "his veracity to some degree." A. 113.

The omitted information was important because Raymond's statement indicates he was sexually interested in underage females and had a collection of "old girlfriends" saved to a microSD card connected to his cellphone. A. 66. Raymond told the investigator that while he lived

---

Raymond was convicted in Oswego County of Grand Larceny, 3rd Degree, a Class D Felony, and Unauthorized Use of a Motor Vehicle, 2nd Degree, a Class E Felony, and sentenced to 2 to 6 years imprisonment. *See* http://nysdoccslookup.docs.ny.gov.

[11] A copy of the news article detailing Raymond's September 24, 2015 arrest, and a portion of his prior felony convictions, was attached as Exhibit A to Seaway's motion to suppress. A. 53, 77.

with Seaway, they "worked on computers together, repairing and rebuilding them for other people." A. 66. Raymond used Seaway's computer, knew Seaway's computer password, and downloaded images from his cellphone, through the microSD card, to Seaway's computer, and labeled the file "Billy's phone." A. 66-67. After he downloaded the files of his old girlfriends to Seaway's computer, he showed them to Seaway. A. 66. Raymond stated that Seaway then offered up hundreds of images and videos of child pornography for Raymond's viewing. A. 66. This portion of Raymond's statement weighs against truthfulness and reliability because Raymond had known access to Seaway's computer, he knew child pornography would be found on Seaway's computer because he put it there, and he certainly had an interest in seeking assistance from law enforcement on his pending state charges. A. 67. *See Gagnon*, 373 F.3d at 236 ("a criminal informer is less reliable than an innocent bystander with 'no apparent motive to falsify.'").

Also questionable is Raymond's suggestion that he knew how to decipher whether the females in the images were minors based on the fact that he was the father to "7 kids between the ages of 5 and 16." A.

23

66. Raymond's attempt to sanitize his basis of knowledge through his children, rather than his own interest in child pornography, weighs against his veracity and reliability as an informant.

Moreover, out of the "100 images and videos" Raymond observed on Seaway's computer, he only described two images and two videos. A. 66-67. Since Raymond had access to Seaway's computer, there was no reliable basis to believe that Raymond was not responsible for those images and videos appearing on Seaway's computer. Discounting this possibility, the district court determined Raymond was credible because of "his detailed descriptions" of the material he observed first-hand. A. 113.

However, there was nothing unique or verifiable in Raymond's descriptions of the images and videos of child pornography that he attributed to Seaway. With respect to the images, Raymond stated one image was of a girl "about 6 years old sitting in a spread eagle position" and the other was an image of "an underage girl on her hands and knees in a doggy style pose" that showed her vagina. A. 66.

24

With respect to the videos, Raymond claimed Seaway had a hard drive that had a bronze or gold outer cover that he would plug into his main computer.  A. 66.   This hard drive contained a folder with videos "of young girls less than 10."  A. 66.  One video was of a naked girl, maybe 11 or 12, dancing and possibly masturbating.  A. 66.  The other was of a naked girl, possibly 5 or 6 years old, lying on a bed as an adult female rubbed her chest and vagina.  A. 66.

Finally, Raymond's reliability and veracity as an informant continued to falter when he suggested that Seaway possessed a DVD that contained a video and pictures taken by Seaway "5 or 6 years ago" of a female.  A.  66.  Raymond claimed that Seaway told him the girl was a friend of Seaway's daughter and had stayed the night at his residence when he lived at Indian Hill trailer park.  A. 66.  Raymond said Seaway's daughter was 7 or 8 years old at the time, but gave no age for the friend. A. 66.  According to Raymond, Seaway believed someone was abusing the female because she brought lacy lingerie to sleep in.  A. 66.  Seaway told Raymond "he was playing with her, but he was not specific about it" and Raymond left the room without inquiring further.  A. 66.  Raymond never

found the DVD, nor did he look for it after Seaway suggested it might be

in the light blue school bus parked behind Seaway's residence. A. 66.

Despite Raymond never laying eyes on the lost DVD, Investigator

Eckler, in his affidavit, transformed this portion of Raymond's statement

as follows:

> It is alleged by William B. Raymond that his uncle Clif had
> sexually abused a child and that Clif Seaway possessed
> photographs he had taken of a young girl who stayed
> overnight at his residence several years ago. The deposition
> is attached for further details.

A. 63.

Yet, as described above, Raymond's statement contains no such

allegation. Additionally, it contradicts Investigator Eckler's affidavit,

which states:

> Based upon the training I have received, as well as experience
> conducting child pornography investigations that have led to
> the execution of search warrants and subsequent
> examinations of computer systems, I have learned that people
> who buy, produce, trade or sell child pornography rarely, if
> ever, dispose of their sexually explicit materials, and they
> treat these materials as "prized possessions."

A. 63.

> The majority of individuals who collect child pornography
> rarely, if ever, dispose of their sexually explicit materials and

may go to great lengths to conceal and protect their collection
of illicit materials from discovery, theft, and damage.

A. 64.

Surely, if the DVD contained images and videos of child pornography,

created by Seaway, it would be considered one of Seaway's "prized

possessions," which, according to Raymond was lost, and Seaway showed

no interest in finding.

Also, in this regard, the district court relied on Investigator Eckler's

affidavit as a way to credit Raymond, stating:

> In addition, Raymond's description of the manner in which
> Seaway stored the files is consistent with the affidavit of
> Investigator Eckler and provides additional indicia of
> reliability.

A. 113.

This finding is erroneous for two reasons. First, the district court did not

point to any portion of Investigator Eckler's eight-page affidavit that

addressed the storage of files. Second, and relatedly, Raymond's

statement contains no information about Seaway's storage of files that

coincides with any portion of Investigator Eckler's affidavit. A. 58-65, 66-

67.

Indeed, Raymond said only that Seaway showed him images of "naked female kids" under the age of 10 from his computer and showed him videos from a file located on a removable hard drive. A. 66. There is nothing specific or unique about this portion of Raymond's statement that lends credibility or reliability to Raymond's claims that Seaway possessed images and videos of child pornography on his computer that were not placed there by Raymond. Instead, Raymond's statements about his own conduct more accurately coincides with that portion of Investigator Eckler affidavit describing the characteristics of collectors of child pornography. A. 64. Raymond had images of "old girlfriends" saved to a microSD card that was connected to his cellphone. A. 66. *See* A. 64 (Investigator Eckler Affidavit, "The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect their collection of illicit materials from discovery, theft, and damage.").

### 2. Raymond's tip was not sufficiently corroborated through an independent police investigation.

Raymond's statement caused Investigator Eckler to apply for a warrant to search Seaway's residence and vehicles, "including the blue

colored charter bus located on the property," to seize and search Seaway's computers and electronic devices for evidence constituting violations of Articles 130 (sex offenses), 260 (offenses relating to children, disabled persons and vulnerable elderly persons), and 263 (sexual performance by a child) of the Penal Law of the State of New York. A. 58-65. Before making this application, Investigator Eckler verified the address Raymond provided for Seaway's residence. As argued above, Raymond's statement lacked "sufficient indicia of reliability" because it did not do enough to establish Raymond's veracity or reliability. In such a case, if law enforcement is able to independently corroborate some of the information provided by an informant, it may be inferred that the remaining, unverified information provided by the informant is also true. *See United States v. Canfield,* 212 F.3d 713, 719 (2d Cir. 2000). But that does not apply here, because, as the district court rightly found, "except for confirming Seaway's address, police did not attempt to corroborate Raymond's information." A. 113.

Although "partial corroboration of an informant is a circumstance that, on totality review, may allow a judicial officer to credit the

29

informant's whole account," this Court has held that "there are outer limits, some grounded in law, others in common sense and experience." *United States v. Clark,* 638 F.3d 89, 98 (2d Cir. 2011) (citations omitted). Here, law, common sense and experience combine to require the police to corroborate more than the location of Seaway's residence. Raymond, who was incarcerated for sex offenses against a minor, already had at least two prior felony convictions (omitted from the search warrant application), clearly had every incentive to lie in order to receive leniency in his pending rape charges. Under these circumstances, corroboration was necessary.

Law enforcement did not attempt to verify even the simplest details of Raymond's statement including whether Raymond had a cousin that he lent his microSD card to; whether Seaway had ever lived at Indian Hill Trailer Park; whether Seaway had a daughter with the name and age identified by Raymond, and if so, whether that daughter had a friend the same age that stayed at Seaway's residence "5 or 6 years ago;" and whether Seaway had "an old international school bus out behind his trailer" that was "painted light blue." A. 66. One critical detail that went

unchecked was whether Raymond had actually lived with Seaway from August of 2015 through September 20, 2015.  A. 66.

Investigator Eckler's inaction conflicted with his purported claims of "knowledge, experience, and training in child exploitation and child pornography investigations."  A. 64. According to Investigator Eckler, this training and experience made him familiar with "certain characteristics common to individuals who have a sexual interest in children," including:

> The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or via the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support.  The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, peer-to-peer, torrents, e-mail, bulletin boards, internet relay chat, newsgroups, instant messaging, and other similar vehicles.

A. 64.

Raymond told police that he watched Seaway pose as a five-year-old girl while he played a virtual reality game called, "Second Life."  A. 67. Seaway would attach "images of naked kids to his room within this game," for other players to view.  A. 67.  Although Investigator Eckler

31

claimed to have specialized training in this area, he never verified whether the game existed, and if so, whether Seaway was a participant.

In sum, the district court's probable cause determination is not due any deference because the search warrant application was based entirely on the word of man with no reason to tell the truth, and Raymond's accusations against Seaway were not corroborated through an independent police investigation.

> 3. **The good faith exception should not apply because the issuing judge was knowingly misled about Raymond's criminal history and the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."**

In the court below, the government, relying on *United States v. Leon,* 468 U.S. 897 (1984), argued that even if probable cause was lacking, the exclusionary rule should not apply because the officers executing the warrant acted in good faith. Because the district court upheld the probable cause finding, the court did not believe it needed to reach the good faith issue, but summarily held that "the agents executing the warrant acted reasonably and in good faith and in objectively reasonable reliance on the warrant." A. 113.

There are four circumstances in which the good-faith exception to the exclusionary rule does not apply: (1) where the issuing judge has been knowingly misled, (2) where the issuing judge wholly abandoned his judicial role, (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable, and (4) where the warrant is so facially deficient, such as by failing to particularize the place to be searched or the things to be seized that reliance upon it is unreasonable. *Leon,* 468 U.S. at 923-924 (citations omitted).

Here, the issuing judge was knowingly misled when Investigator Eckler failed to provide the full extent of Raymond's criminal history in the search warrant application. This was a critical factor in the probable cause determination because Raymond was an untested informant whose reliability and veracity were at issue. Additionally, Investigator Eckler affirmed under penalty of perjury that Seaway had told Raymond that he sexually abused a minor and recorded it when that allegation was not included anywhere in Raymond's attached deposition. And, as fully set forth above, the exclusionary rule should apply because the warrant was

"so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.,* at 923.

The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, *Weeks v. United States,* 232 U.S. 383 (1914), but also evidence later discovered and found to be derivative of an illegality or "fruit of the poisonous tree." *Nardone v. United States,* 308 U.S. 338, 341 (1939). The rule "extends as well to the indirect as the direct products" of the constitutional violation. *Wong Sun v. United States,* 371 U.S. 471, 484 (1963). Therefore, the exclusionary rule applies not only to the physical evidence that was searched and seized pursuant to the illegal search warrant, but also to the verbal evidence provided by Seaway on February 24, 2016, as a direct result of the execution of the warrant. A. 48, 68.

## CONCLUSION

Based on the foregoing reasons, this Court should vacate the judgment of the district court and remand with instructions to grant Seaway's suppression motion.

October 1, 2018                    Respectfully submitted,

                                   LISA A. PEEBLES
                                   Federal Public Defender

                          By:    */s/*
                                   Melissa A. Tuohey
                                   Assistant Federal Public Defender
                                   4 Clinton Square, 3rd Floor
                                   Syracuse, New York 13202
                                   (315) 701-0080

35

## CERTIFICATE OF COMPLIANCE

Pursuant to 2ND CIR. R. 32 (a)(7), undersigned counsel certifies that this brief complies with the type-volume limitations of FED. R. APP. P. 32 (a)(7).

1.      Exclusive of the portions exempted by FED R. APP. P. 32(a)(7)(B)(iii), this brief contains 6,680 words.

2.      This brief has been prepared in proportionally spaced typeface using Microsoft Word 2013 software in Century 14 point font in text and Century 12 point font in footnotes.

3.      Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in FED. R. APP. P. 32 (a)(7), may result in the Court's striking this brief and imposing sanctions against the person using the brief.

*/s/*

MELISSA A. TUOHEY
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I, Valarie Bruni, certify that today, October 1, 2018, one copy of the Appellant's Brief and Appendix, was served upon Mr. Grant C. Jacquith, United States Attorney, through Steven D. Clymer, AUSA, 100 South Clinton Street, Syracuse, New York 13261, by CM/ECF followed by hand delivery.

*/s/*
Valarie Bruni